IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BREITMAN,<br><br>                    Plaintiff,<br><br>        v.<br><br>NATIONAL SURETY CORPORATION<br><br>                    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil No. 14-7843 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

This case arose out of an insurance coverage dispute between Plaintiff Steven Breitman and Defendant National Surety Corporation, after Defendant denied Plaintiff's claim for loss and damage to Plaintiff's property caused by flood, not wind, as a result of Superstorm Sandy. Plaintiff asserts that the full amount of loss and damages was $711,798,55.00, but Defendant only paid $114,181.06, and he alleges that Defendant conducted an improper adjustment, wrongfully denied his claim, and delayed payment. Plaintiff's original Complaint brought claims for breach of contract (Count One), breach of the duty of good faith and fair dealing (Count Two), bad faith (Count Three), and violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2 (Count Four).[1]

---

[1] Plaintiff initially filed suit in the Superior Court of New Jersey and Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28

Defendant moved for partial dismissal of Plaintiff's Complaint, and Plaintiff opposed and cross-moved to amend his Complaint. The revised Complaint contains additional factual allegations and three claims: breach of contract (Count One), breach of the duty of good faith and fair dealing/bad faith (Count Two), and violation of the NJCFA (Count Three). In reply, Defendants seek the dismissal of Count Three and to strike the request for attorney's fees from Count Two. The only questions before the Court are whether the Proposed Amended Complaint plausibly alleges a violation of the Consumer Fraud Act, and whether Plaintiff may request attorney's fees as part of consequential damages to a claim of bad faith.

Because Defendant has argued only for the dismissal of one claim in the revised Complaint and because the additional factual allegations are helpful to Plaintiff's other claims, the Court will permit Plaintiff's Proposed Amended Complaint to be filed. However, because Plaintiff has not stated a plausible

_____

U.S.C. § 1332(a)(1). 28 U.S.C. § 1332(a) provides district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between – (1) citizens of different States." Diversity jurisdiction is established here because Plaintiff alleges damages over $75,000; Plaintiff is a citizen of New Jersey; and Defendant is a "foreign insurance company" incorporated in Illinois with its statutory home office in Illinois. (Notice of Removal [Docket Item 1] ¶ 3, Compl. [Docket Item 1] ¶¶ 1-2, 56; Sworn Statement in Proof of Loss [Docket Item 1-2].)

2

claim for fraud under the NJCFA, the Court will dismiss Count Three without prejudice. At this time, the Court will not strike Plaintiff's demand for attorney's fees. The Court finds as follows:

1.   Plaintiff Steven Breitman's property, a home located at 12 Broadmoor Drive in Monmouth, New Jersey, was insured by Defendant National Surety Corporation, a company that advertises itself as a leader in providing high net worth personal insurance. Plaintiff alleges that after the home suffered substantial damage from Hurricane Sandy in October of 2012, Defendant conducted an improper adjustment and underpaid Plaintiff's insurance claim; misrepresented what damage was covered under the policy; and failed to conduct a reasonable investigation after improperly denying Plaintiff's claim. (Compl. [Docket Item 1-1] ¶¶ 14-15, 22.) He additionally alleges that Defendant improperly delayed making a final decision on Plaintiff's insurance claim for nearly two years, forcing Plaintiff to file a bare bones complaint within days of receiving the decision in order to preserve his claims and prevent them from being time-barred. (Am. Compl. [Docket Item 9-1] ¶¶ 65-66.)

2.   Plaintiff's original Complaint contained four counts: breach of contract (Count One); breach of the duty of good faith and fair dealing (Count Two); bad faith (Count Three); and

violations of the NJCFA (Count Four). On January 21, 2015, Defendant filed a partial Motion to Dismiss [Docket Item 7-1] Count Three of the Complaint as duplicative of Count Two, to dismiss Plaintiff's claim under the NJCFA, and to strike Plaintiff's request for attorney's fees. With respect to Plaintiff's NJCFA claim, Defendant argued that the Complaint lacked specific allegations to put Defendant on notice of the precise fraudulent and deceptive acts it was charged to have committed, and did not meet the heightened pleading standard under Fed. R. Civ. P. 9(b). (Def. Mot. to Dismiss at 7-9.)

3.    On February 17, 2015, 27 days later, Plaintiff filed an opposition together with a Cross-Motion to Amend [Docket Item 9] and a Proposed Amended Complaint which fleshes out the original Complaint by setting forth in much greater detail the factual allegations underlying the suit. [Docket Item 9-1.]

4.    According to the Amended Complaint, Plaintiff insured his property with Defendant for $2,658,000 in dwelling coverage; $531,600 for other structures coverage, and $1,329,000 for personal property coverage. (Am. Compl. ¶ 16.)[2] The policy purchased by Plaintiff does not cover water damage, which is defined in part as "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether

---

[2] For purposes of these motions, the Court accepts Plaintiffs' allegations as true.

or not driven by wind." (Ins. Policy, Ex. B to Def. Mot. to Dismiss [Docket Item 7-1] at 15.)[3]

5.    On November 18, 2012, shortly after Plaintiff's property was hit by Hurricane Sandy, Defendant's claim adjuster informed Plaintiff that "the loss [to Plaintiff's property] includes water damage . . . as well as damage separately caused by wind"; that the insurance policy covered damage "that was caused directly by wind"; and that "we will determine the full extent of damage caused by wind and will adjust and pay that portion of your claim." (Am. Compl. ¶ 44.)

6.    In December of 2012 and June of 2013, Defendant paid two invoices totaling $43,274.21 for certain repairs and services on Plaintiff's property, which included mold remediation, water extraction, drying equipment, dehumidifiers, and air handlers and scrubbers. (Id. ¶¶ 49-50.) In December of 2013, Defendant informed Plaintiff that that the estimated

---

[3] The Court in considering a motion to dismiss "looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, because Plaintiff's Complaint is predicated upon the insurance policy that Plaintiff took out and explicitly refers to it, the contents of the insurance policy will properly be considered in connection with the pending motions to dismiss. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

repair cost for Plaintiff's property was $114,181.06. Plaintiff asserts that this estimate did not include personal property loss and "other structure loss and damage" caused by the storm. Plaintiff had informed Defendant about these other losses earlier in the year and had estimated those claims at $223,804.72. (Am. Compl. ¶¶ 51, 56-57.) At the time Plaintiff submitted the estimate of $223,804.72, a different claims adjuster had assured him that "many of the items" Plaintiff had included "will be covered under your policy, but there are several items that will not." (Id. ¶ 52.)

7.   In June of 2014, Defendant issued a check to Plaintiff in the amount of $114,181.06, stating that the payment was "in no way . . . considered any type of final payment" and that the check was an advance only, based on the calculated repair cost. (Id. ¶¶ 58-59.) Approximately three months later, Defendant asked Plaintiff to submit a Proof of Loss, which Plaintiff did. Plaintiff's Proof of Loss statement totaled $711,798.55. (Id. ¶ 61.)

8.   By letter dated October 20, 2014, nearly two years after Hurricane Sandy, Defendant denied Plaintiff's claim for $711,798,55 and stated that the $114,181.06 represented the "undisputed building amount." The letter also stated that the interior demolition of Plaintiff's home had prejudiced its ability to investigate Plaintiff's claim. (Id. ¶¶ 63-64.)

9.    Plaintiff asserts in his Amended Complaint that
Defendant violated the NJCFA by "knowingly and intentionally
making false and misleading statements, representations and
assurances to Plaintiff as to the type, scope and coverage of
the insurance and as to the method and manner of claim
adjustment and settlement." (Id. ¶ 124.) He alleges that he
purchased Defendant's insurance policy because Defendant
advertised itself as providing "high net worth protection and
superior claims and risk services." (Id. ¶¶ 125-26.) He alleges
that Defendant "was deceptive in its adjustment of the claim,"
"utilize[ed] low repair values and assign[ed] them to the
covered loss to increase its own profitability," fraudulently
told Plaintiff that his losses were not covered even though they
were, and misrepresented its insurance policy to Plaintiff. (Id.
¶ 127.) He also alleges that the denial of coverage was one
instance in a pattern of fraudulent activity by National
Security Corporation aimed at depriving its insureds of payment
of benefits under their policies. (Id. ¶ 129.)[4]

---

[4] Plaintiff asserts:

. . . Plaintiff's experience is not an isolated case.
The acts and omissions of Defendant committed in this
case, or similar acts and omissions, occur with such
frequency that they constitute a general business
practice of Defendant with regard to handling these
types of claims. Defendant's entire process is unfairly
designed to reach favorable outcomes for the company at
the expense of the policyholder. Specifically, Defendant
received a benefit when it refused to pay Plaintiff's

10.   In addition to revising the NJCFA claim, the Amended Complaint merges Counts Two and Three into one count (Count Two – breach of duty of good faith and fair dealing/bad faith). Plaintiff acknowledged that attorney's fees were not recoverable in a suit against the insurer to compel or enforce coverage and dropped the demand for attorney's fees from Count One (breach of contract). However, the Complaint continues to seek attorney's fees in Count Two under the theory that they are part of the consequential damages resulting from Defendant's bad faith denial of Plaintiff's claim. (Pl. Mot. to Amend [Docket Item 9-2] at 13-14.)

11.   Defendant opposes the motion to amend but challenges only the viability of Plaintiff's NJCFA claim in Count Three. Defendant argues that Plaintiff has not plausibly stated a claim for fraud, and that NJCFA does not apply to individual denial of benefits under an insurance policy. (Def. Reply [Docket Item 11] at 7-11.) Defendant also seeks to strike from the Amended Complaint Plaintiff's request for attorneys' fees as consequential damages in Count Two. (Id. at 11-13.)

---

entire claim because it retained hundreds of thousands of dollars that should rightfully have been paid to Plaintiff under the policy. (Id. ¶ 130.)

12.   Federal Rule of Civil Procedure 15(a) permits a party to amend his pleading before trial as a matter of course in limited circumstances, or otherwise with the consent of the opposing party or the court's leave. Plaintiff filed his Motion to Amend 27 days after Defendant's Motion to Dismiss, and was therefore not within the 21-day window to amend as of right under Federal Rule of Civil Procedure 15(a)(1). Rule 15(a)(2) permits Plaintiff to amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "[t]he court should freely give leave when justice so requires," id, the decision to grant leave to amend a complaint rests within the sound discretion of the trial court. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile, meaning that the complaint, as amended, would fail to state a claim upon which relief could be granted. Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). In assessing "futility," the court applies the same standard of legal sufficiency as applies under Fed. R. Civ. P. 12(b)(6). Shane, 213 F.3d at 115. In other words, the amended complaint must be dismissed if, accepting all well-pleaded

allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff has failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).

13.   While the new allegations in the Proposed Amended Complaint provide more detail about the submission and handling of Plaintiff's insurance claim, they boil down to a claim for wrongful denial of insurance benefits and do not make out a claim of fraud under the NJCFA. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, is designed to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." Daaleman v. Elizabethtown Gas Co., 390 A.2d 566, 569 (N.J. 1978). A claim under the NJCFA requires the plaintiff to establish that the defendant engaged in an unlawful practice, defined under New Jersey statute as

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . . .

N.J.S.A. 56:8-2. Unlawful practices fall into three general categories: (1) an affirmative misrepresentation, "even if unaccompanied by knowledge of its falsity or an intention to deceive"; (2) an omission or failure to disclose a material fact, if accompanied by knowledge and intent; and (3) and violations of specific regulations under the NJCFA, which are reviewed under strict liability. See Cox, 647 A.2d at 462; DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 64 A.3d 579, 587 (N.J. Super. Ct. App. Div. 2013).

14. The "prime ingredient" of all types of consumer fraud is the capacity to mislead, Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994); Fenwick v. Kay Am. Jeep, Inc., 371 A.2d 13, 16 (N.J. 1977), and claims under the NJCFA are subject to the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b), which requires particularized pleading for the conduct underlying fraud claims. Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).[5]

---

[5] Under Rule 9(b), the "circumstances" of the alleged fraud must be pled with enough specificity to "place defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Although the rule states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," and does not require the plaintiff to plead every material detail of the fraud, the plaintiff must use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir.2002) (internal quotations and citations omitted).

15.   Although Plaintiff insists that Defendant made false and misleading statements about the insurance coverage, Plaintiff's legal conclusions are not entitled to an assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (the court, when examining a complaint, must strip away conclusory statements and look at whether the underlying facts plausibly give rise to an entitlement of relief). A careful reading of Plaintiff's Amended Complaint reveals no well-pled factual allegations to support his conclusory statements, and no specific allegations of fraud to satisfy Rule 9(b).

16.   Plaintiff alleges that he took out an insurance policy with Defendant expecting better coverage than what he ultimately received because Defendant held itself out as an "industry leader that affords his clients with superior claims and risk services." (Am. Compl. ¶ 8). But nothing in the Amended Complaint suggests that Defendant misrepresented the terms of the insurance policy Plaintiff purchased. Plaintiff's house suffered both wind and water damage, but the insurance policy itself states that water damage would not be covered, and indeed, Plaintiff admits in the Amended Complaint that shortly after Hurricane Sandy, a claims adjuster told Plaintiff that Defendant would cover only the portion of the claim related to wind damage. (Am. Comp ¶ 44.) Defendant ultimately paid invoices

12

for repairs totaling $43,274.21 before issuing Plaintiff a check
for $114,181.06, and Plaintiff has not alleged with any of the
specificity required under Rule 9(b) how or why Defendant's
payment did not meet the terms of the insurance policy. While
Plaintiff alleges generally that Defendant's denial of the
$711,798.55 claim was improper, he makes no specific assertions
about what types of repairs or services were included in his own
$711,798.55 estimate, how the damage was caused by the wind
event rather than flood, or why they should have been covered
under the policy. Most critically, the Complaint is devoid of
any allegations that Defendant made false statements or
assertions about the policy leading Plaintiff to believe that
the repairs or services Defendant denied were included in
Plaintiff's coverage when Plaintiff purchased it.

17.  Nor are there facts in the Amended Complaint to
suggest that Defendant told Plaintiff he would be fully
compensated for the claims he submitted. Defendant's response to
Plaintiff's first estimate of $223,804.72 was that "many of the
items will be covered under your policy, but there are several
items that will not." (Am. Compl. ¶ 51.) Thus, it made clear
that not all of the damage to Plaintiff's property would fall
under Plaintiff's insurance coverage. Defendant ultimately
issued Plaintiff a check for $114,181.06, or roughly half of
Plaintiff's initial estimate. Although Defendant first stated

13

that the check was not a final payment and later revised its statement, nothing in the Amended Complaint suggests that Defendant misrepresented to Plaintiff that it would be issuing additional checks. The mere fact that Plaintiff revised his estimate of loss and damage upward to $711,798.55 and Defendant declined to pay that amount is not enough to create a plausible inference that Defendant engaged in an "unlawful practice."

18.  Defendant may have underpaid Plaintiff's claim,[6] but underpayment or even "denial of insurance benefits to which [the plaintiff] believed [he was] entitled does not comprise an unconscionable commercial practice" under the NJCFA. Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998); NN&R, Inc. v. One Beacon Ins. Grp., 362 F. Supp. 2d 514, 523 (D.N.J. 2005) (Simandle, J.) (dismissing claim under NJCFA where plaintiff alleged that defendants failed to make certain payments under insurance policy even though they led plaintiff into believing that they would at the time plaintiff entered into the contract, because "[w]ithout more, the mere denial of claims does not support a claim of unconscionable conduct."). No reasonable reading of the Amended Complaint could support the conclusion that Defendant misrepresented, deceived, or misled

---

[6] For purposes of this motion to dismiss, it is assumed that Defendant underpaid the claim, as alleged. Such underpayment does not establish fraud, as explained below.

14

Plaintiff in the performance of its obligations, as required for
an NJCFA claim.[7]

19.  Because the facts in the Proposed Amended Complaint
still do not yield a plausible claim for fraud, permitting the
amendment on Plaintiff's NJCFA claim in its current state would
be futile. Accordingly, the Court will dismiss the claim under
the NJCFA.[8] At this time, the dismissal will be without

---

[7] Even if, as Plaintiff alleges, Defendant's conduct violated the
New Jersey Unfair Claims Act, the alleged violations do not
constitute fraudulent or misleading commercial practices. Van
Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir.
1998).

[8] Additionally, the Court observes that the NJCFA may not apply
to the denial of an individual claim for insurance benefits. The
New Jersey Supreme Court has never decided the issue, but lower
New Jersey courts have previously held that an individual denial
of insurance benefits is not subject to the Consumer Fraud Act.
Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d
Cir. 1998); see also Mikiper v. Motor Club of Am., 557 A.2d 332,
336 (N.J. Super. Ct. App. Div. 1989); Pierzga v. Ohio Cas. Grp.
of Ins. Cos., 504 A.2d 1200 1203-04 (N.J. Super. Ct. App. Div.
1986). Somewhat recently, the Third Circuit held that a claim of
fraud under the NJCFA is possible in the case of a fraudulent
scheme to deny insureds their rightful benefits, see Weiss v.
First Unum Life Ins. Co., 482 F.3d 254, 266 (3d Cir. 2007), but
Plaintiff has not alleged with any kind of sufficient
particularity to overcome Rule 9(b) that Defendant's conduct in
Plaintiff's case was part of a broader pattern of fraudulent
activity. Following the decision in Weiss, however, at least
some courts in this district have permitted insurance payment
claims based on the CFA, even as the New Jersey Appellate
Division has continued to hold that "the payment of insurance
benefits is not subject to the CFA." Compare, e.g., Bannon v.
Allstate Ins. Co., No. 14-1229, 2015 WL 778828, at *5 (D.N.J.
Feb. 24, 2015) (finding that NJCFA applies to payment of
insurance benefits) and Bartels v. Hudson Ins. Co., No. 05-3890,
2008 WL 5070660, at *5 (D.N.J. Nov. 24, 2008) (same) with Beaver
v. Magellan Health Servs., 80 A.3d 1160, 1168 n.1 (N.J. App.
Div. 2013) (noting that plaintiff's complaint may also be

prejudice. Plaintiff may assert a claim under the NJCFA at a later time if he is able to cure the deficiencies discussed herein and plead such fraud with the particularity required by Rule 9(b), Fed. R. Civ. P.

20. The Court will not at this time strike Plaintiff's request for attorney's fees as part of his claim for breach of the duty of good faith (Count Two). Under New Jersey law, attorney's fees are recoverable where provided for under a court rule or statute, pursuant to a contract, or "where counsel fees are a traditional element of damages in a particular cause of action." Guarantee Ins. Co. v. Saltman, 526 A.2d 731, 734 (N.J. Super. Ct. App. Div. 1987). New Jersey law does not permit a fee award to an insured who brings direct suit against his insurer for coverage. See N.J. Ct. R. 4:42-9(a)(6); Guarantee Ins. Co., 526 A.2d at 734-35 (attorney's fees are not available on a first-party insurance claim under N.J. Ct. R. 4:42-9(a)(6)); 213-15 76th Street Condo Ass'n v. Scottsdale Ins. Co., No. 14-7695, 2015 WL 4617254, at *2 (D.N.J. July 31, 2015). However, fees may be recoverable on a bad faith claim because

---

subject to other infirmities, including that "'the payment of insurance benefits is not subject to the CFA'" (quoting Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 551 (N.J. 1997))). However, because Defendant raised this argument in opposition to Plaintiff's cross-motion and Plaintiff did not have an opportunity to respond, the Court will not rest its decision on this ground and will not dismiss Plaintiff's NJCFA claim with prejudice.

16

consequential economic damages are part of the damages award in a cause of action for bad faith, and at least one New Jersey appeals court has noted that counsel fees may be included in consequential damages. See Pickett v. Lloyd's, 621 A.2d 445, 458 (N.J. 1993) (in claim for bad faith denial of insurance benefits, "liability may be imposed for consequential economic losses that are fairly within the contemplation of the insurance company."); Taddei v. State Farm Indem. Co., 951 A.2d 1041, 1048 (N.J. Super. Ct. App. Div. 2008) (noting that plaintiff is entitled to recover "any foreseeable consequential damages" if he could prove a claim of bad faith, with damages "typically includ[ing], for example, costs of litigation, including expenses for experts and counsel fees, and prejudgment interest."). Defendant urges the Court to find otherwise and to dismiss Plaintiff's request for attorney's fees in Count Two, but the Court does not find it necessary to decide the issue conclusively at this early stage in the litigation. Plaintiff has plausibly shown that fees may be part of the consequential damages on a claim of bad faith, and the Court will accordingly permit the request for attorney's fees to remain in Count Two. Should Plaintiff later prove his claim against Defendant, the issue of damages will be revisited.

21. Because the rest of Plaintiff's Proposed Amended Complaint contains additional factual allegations relating to

the other counts and Defendant has not sought dismissal of those counts, because Plaintiff filed his Amended Complaint just six days after the deadline for amending as of right, and because there is no indication of Plaintiff's bad faith or prejudice to Defendant, the Court will grant the rest of Plaintiff's Motion to Amend and permit the Amended Complaint to be filed without Count Three. Accordingly, the Court will grant in part Plaintiff's Cross-Motion to Amend and deny Defendant's Motion to Dismiss as moot. Plaintiff shall file the Amended Complaint within five (5) days from entry of this Order. An accompanying order will be entered.


**September 29, 2015**                           **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                Chief U.S. District Judge

18